GOLDIE HANES, Appellee, *vs.* THE CENTRAL ILLINOIS UTILITIES COMPANY, Appellant.

*Opinion filed February 21, 1914.*

1. WILLS—*word "children," in its ordinary significance, does not include grandchildren.* The word "children," in its ordinary significance, denotes immediate offspring, and will not be construed to mean grandchildren unless a strong case of intention or necessary implication requires it.

2. SAME—*word "children," in its technical sense, is a word of purchase.* The word "children," both in its technical and general sense, is used as descriptive of persons, and in its technical sense is a word of purchase and not a word of limitation.

3. SAME—*rule in Shelley's case ordinarily applies only to limitations using word "heirs."* The rule in *Shelley's case* applies only to limitations in which the word "heirs" is used, unless it can be clearly ascertained that the testator, by the use of some other word, meant "heirs."

4. SAME—*when rule in Shelley's case does not apply.* Where the testator devises a tract of land to his son for life and at his death said lands "shall descend to his children in fee if he shall leave any child or children surviving him, and if not, then said lands shall descend in fee to his heirs-at-law," the rule in *Shelley's case* does not apply, and the son takes a life estate only, and at his death his surviving children take the fee.

5. SAME—*when the word "descend" is not used in the sense of passing land by succession.* Where a will gives a life estate in lands to the testator's son and provides that at his death said lands shall "descend" to his children if he shall leave any child or children surviving him, and if not, then said lands shall descend to his

heirs-at-law, the word "descend" is not used in the sense of passing land by succession, but to signify his children shall succeed immediately to the possession of the land upon the life tenant's death.

6. SAME—*when a devisee does not take as a purchaser in fee.* The fact that the testator's son, who is given a life estate in lands, is required by the will to make certain cash payments to the executor does not make him a purchaser in fee, where the will expressly makes such payments a charge upon the rents, issues and profits of the land.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

A. F. GOODYEAR, for appellant.

R. C. SOUTH, for appellee.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Goldie Hanes, appellee, secured a judgment in ejectment against the Central Utilities Company, appellant, in the circuit court of Iroquois county, from which this appeal has been prosecuted.

Samuel Keene died testate September 26, 1881. He devised the land in controversy by the fourth clause of his will, which is as follows:

"*Fourth*—I give and devise to my son William Thomas Keene the SW ¼ of SW ¼ and all that part of the SE ¼ of SW. ¼ lying west of the public road as at present traveled and laid out, of Sec. 5, and also the NE ¼ of NW ¼ of Sec. 8, all in T. 26 N. R. 12 W. of 2d P. M., with all the appurtenances thereunto belonging or appertaining, to have and to hold the same, and all the rents, issues and profits thereof, during his natural life, and at his death said lands hereby devised to him shall descend to his children *in fee* if he shall leave any child or children surviving him, and if not, then said lands shall descend *in fee* to his heirs-at-law; and provided, and this devise is made upon the express con-

dition, that the said William Thomas Keene, or his heirs and legal representatives, shall pay to the executor of my estate the sum of $500 in five equal annual payments of $100 each, the first payment to be made one year after my decease and the others annually thereafter, and said sum shall be a lien on the rents, issues and profits of said lands until the same shall be fully paid, and which lien may be enforced by my said executor collecting in person said rents, issues and profits or through any court of competent jurisdiction, as he may deem best. The life estate hereby devised to said William Thomas Keene shall be deemed and construed to be for his personal benefit, only, and which he can not in any manner alienate or encumber, and which shall not be liable for his debts or any other liability which he may incur, except the payment of the $500 above mentioned."

On the testator's death William Thomas Keene went into possession of the real estate so devised, and in September, 1907, granted to Harry J. Frith and his assigns the right to erect and maintain poles, wires and appliances thereon for the purpose of carrying electric current over the said land. Fourteen poles were erected under this grant, and these, with the usual wires and appliances, were maintained during the lifetime of William Thomas Keene and down to the present time. William Thomas Keene died intestate, leaving surviving his two children, the appellee and George Keene. After his death the son, George, conveyed to appellee his undivided interest in the real estate. After acquiring the whole title appellee brought this action of ejectment against appellant, who has succeeded to the rights of Harry J. Frith.

Appellant contends that William Thomas Keene, under a proper construction of the will of Samuel Keene, took the fee to said real estate, and that judgment was erroneously entered upon the theory that he took but a life estate. Appellant concedes that if William Thomas Keene took merely a life estate under the will the judgment was proper, and

that it is entitled to a reversal only in case it should be held that he took the fee. The contention of appellant is, that as Samuel Keene devised to William Thomas Keene an estate for life and by the same devise provided that the same property should descend to his children, if any, and if none, then to his heirs-at-law, William Thomas Keene took the fee under the rule in *Shelley's case.* This contention cannot be sustained. To apply the rule in *Shelley's case* this will must be construed as devising to William Thomas Keene an estate for life with remainder to his heirs. William Thomas Keene might have died leaving a child or children, and also grandchildren who were children of a deceased child. In that event, under the will of Samuel Keene the grandchildren of William Thomas Keene would take nothing although they were his heirs-at-law, as the word "children," in its ordinary significance, denotes immediate offspring, and will not be construed to mean grandchildren unless a strong case of intention or necessary implication requires it. *Arnold* v. *Alden*, 173 Ill. 229; *Martin* v. *Modern Woodmen of America*, 253 id. 400.

The word "children," in both its technical and general sense, is used as a description of persons, and in its technical sense is a word of purchase and not a word of limitation. The rule in *Shelley's case* applies only to limitations in which the word "heirs" is used, unless it can be clearly ascertained that the testator by the use of some other word meant "heirs." (*Schaefer* v. *Schaefer*, 141 Ill. 337.) The word "children," in a will, does not ordinarily mean "heirs," so as to bring the devise under the operation of the rule in *Shelley's case*, unless the context of the will leaves no doubt of such intention. (*Schaefer* v. *Schaefer, supra; Connor* v. *Gardner*, 230 Ill. 258.) In this case it is apparent that the testator did not use the word "child" or "children" in the sense of heir or heirs, as these words are used in the will to distinguish this class from the heirs-at-law of William Thomas Keene. In a devise to one for and during his nat-

ural life, with remainder to his "child" or "children" in fee, the rule in *Shelley's case* has no application, and the court is left free to adopt a construction which will carry into effect the intention of the testator. (*Connor* v. *Gardner, supra.*) The rule in *Shelley's case* could apply to this devise only in case William Thomas Keene had died leaving no child or children surviving him, in which event the grant to Frith would have been binding upon his heirs.

It is further urged that the rule in *Shelley's case* applies if the word "descend," as used in the will, is given its ordinary meaning, and that in the devise of a life estate to William Thomas Keene, with remainder "to descend" to his children, the testator grafted onto the life estate an estate of inheritance more certainly than if he had used the word "heirs" instead of "children" and had omitted the word "descend." A consideration of this whole paragraph of the will leads to the conclusion that the word "descend" was not used in the sense of passing land by succession, as where an estate vests by operation of law in the heirs upon the death of the ancestor, but is used to signify that his children, if he leave children surviving, shall succeed immediately to the possession of the lands upon his death.

The further contention is made that William Thomas Keene took as a purchaser in fee, for the alleged reason that the will imposed upon him a personal liability to pay the executor the sum of $500. The payment of $500 to the executor in five equal installments was not made a personal liability upon the devisees but was expressly made a charge upon the rents, issues and profits of the land devised, hence the rule sought to be invoked has no application.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*